IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BOBBIE-JEAN SWEETIN,** | § § § | |
| *Plaintif,* | § § | |
| vs. | § § | **CIVIL ACTION NO.: 4:14-cv-2935** |
| **NATIONAL OILWELL VARCO, L.P.** **and GRANT PRIDECO, INC.,** **,** | § § § § § | **JURY DEMANDED** |
| *Defendants*, | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Bobbie-Jean Sweetin ("Plaintiff") files this lawsuit against National Oilwell Varco, L.P. ("NOV") and Grant Prideco, Inc. ("Grant Prideco") (collectively, "Defendants") to recover back pay, front pay, liquidated damages, compensatory damages, punitive damages, costs, and attorney's fees, and for cause of action would show the following:

### I.   PARTIES

1.   Plaintiff, Bobbie-Jean Sweetin, is an individual residing in Navasota, Grimes County, Texas. Plaintiff was employed by Defendants.

2.   Defendant NOV is a foreign limited partnership formed in Delaware and headquartered in Houston, Harris County, Texas.  Defendant NOV may be served with notice of this suit by serving its registered agent C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3. Defendant Grant Prideco is a foreign for-profit corporation formed in Delaware and headquartered in Houston, Harris County, Texas. Defendant Grant Prideco may be served with notice of this suit by serving its registered agent C T Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.   JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Additionally, venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this district and it is the district in which Defendants' principal offices are located.

## III.   NATURE OF CLAIMS

6. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e-5(e)(3)(A), and the Fair Labor Standards Act, as amended by the Equal Pay Act, 42 U.S.C. § 206(d) to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's sex (female) and Plaintiff's protected complaints involving sex discrimination.

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a charge of discrimination against Defendants with the Texas Workforce Commission–Civil Rights Division ("TWC-CRD") and the Equal Opportunity Commission ("EEOC"). Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit A.

## V. FACTS

8. In February 2008, Plaintiff was originally hired by Defendant Grant Prideco as a temporary Heavy Equipment Operator. In September 2008, Plaintiff was hired as a permanent employee. Shortly thereafter, Defendant Grant Prideco completed its merger with Defendant NOV.

9. Since the time of her hiring, Plaintiff continued in her same position as a Heavy Equipment Operator, and was the only female in that position. Plaintiff initially started as a Class C Operator, the lowest level of a Heavy Equipment Operator. Typically, Defendants' employees are promoted from Class C Operators to Class B Operators within four to five months, and then promoted to Class A Operators within another several months. Thus, the usual time period for Defendants' employees to promote from Class C Operators to Class A Operators is about 12 to 14 months. However, because Plaintiff is a female, she was relegated to being a Class C Operator for over four years, while male employees, with the same or less experience than Plaintiff were promoted from Class C to Class A Operators within 12 to 14 months. In fact, Plaintiff trained 10-15 male employees, including Magnus Eaton, who were promoted from Class C Operators to Class A Operators within 12 to 14 months and ahead of Plaintiff. Plaintiff was finally promoted to a Class A operator in 2013.

10. By virtue of the jobs they perform, Class A Operators receive specialized training not generally available to Class B and C Operators, and are better candidates for promotion. Additionally, significant hourly raises accompany promotions to Class A and B Operator positions. Defendants' Class C Operators earn between $13.81 and $14.91 per hour, Class B Operators earn between $14.91 and $16.50, and Class A Operators earn between $16.50 to over $18.00. Though Defendants gave male operators raises twice a year, over the four years that

Plaintiff was a Class C Operator, Defendant only gave her one raise, which was a one percent hourly raise.

11. As stated above, by 2010 Defendants trusted Plaintiff to train less experienced male operators, who were being promoted ahead of her. Plaintiff usually trained several operators at once and required the use of cell phone while training to update the Lead Supervisors. Unbeknownst to Plaintiff, during this time she was "warned" for using her cell phone. However, other male operators were caught using their cell phones while working and never received a write up or a warning. One male employee, Hendrick Woods, was caught using his cell phone when prohibited at least 25 times, but never received so much as a warning.

12. This "warning" for prohibited cell phone use, was ultimately used as pretext to deny Plaintiff a promotion. On at least four separate occasions, Plaintiff was denied promotion to a Lead position though she trained for the position for over two years and had as much or more seniority and experience than the four male candidates who were ultimately promoted. In February 2011, a Lead position became available. According to Defendants' own policy, they were required to post the open position. Instead of posting the position, Defendants promoted James Garcia to the position though Plaintiff had the training and the equivalent experience and seniority.

13. Plaintiff inquired as to why she was denied the lead position. Defendants informed her she had received a "warning" for using her cell phone when prohibited, and could not be considered. However, Defendants never actually warned Plaintiff about her cell phone use. Furthermore, Defendants promoted Magnus Eaton, a male employee, who had five major safety incidents, while Plaintiff who merely received a warning was passed over.

14. Within six months of being promoted, James Garcia left the Lead position, which left his and three other Lead positions open. During Fall 2012, Defendants promoted four males who either had the same qualifications as Plaintiff or were far less qualified. Ruben Herrera, who had the same seniority and experience as Plaintiff, was offered the Lead position, even though he did not want it. Another male, Patrick Tennell, held a Lead position three years prior and was subsequently demoted. However, he was offered the promotion yet again, instead of Plaintiff. Plaintiff trained another male, Stephen Suggs, who had much less experience than Plaintiff, but was promoted ahead of her. Defendants even promoted James Brewer, who was from maintenance department and had no operating experience. Adding insult to injury, Plaintiff actually had to train Mr. Brewer for the Lead position.

15. Plaintiff's supervisor, Jason Eaton, knew Plaintiff was unhappy about being passed over for the Lead position. The day after the four promotions were announced, Mr. Eaton told Plaintiff that though she was not promoted to Lead, he was going to make her a "Trainer" and she would receive a buggy (golf cart), an office, a computer, and Lead wages. Plaintiff immediately began taking on more responsibility for this supposed "Trainer" position. However, a few months later, Mr. Eaton told Plaintiff that Defendants had decided not to fill the position.

16. Additionally, during her employment with Defendants, Plaintiff learned she was earning at least $3.00 less per hour than males in her same operator position. Thus, Defendants' male employees earned more than Plaintiff though they had much less experience and seniority than Plaintiff. In late 2012, Plaintiff lodged internal complaints with her supervisors, the Human Resources Department, and corporate regarding Defendants' failure to promote her and give her raises. In January 2013, when Defendants failed to take action regarding Plaintiff's complaints, Plaintiff filed a charge of discrimination with the TWC-CRD and EEOC. Since the filing of her

internal complaints and formal charge, Defendants continuously retaliated against Plaintiff and constructively discharged her.

17.     During February 2013 and within weeks of Plaintiff filing her formal charge, Defendants significantly reduced the number of hours Plaintiff worked. Working large amounts of overtime is standard in Defendants' industry, and Plaintiff, like most of Defendants' employees, was dependent on regularly working numerous hours of overtime. In the five years prior to Plaintiff lodging her internal complaints of sex discrimination and filing a formal charge, Defendants scheduled Plaintiff to work on average 84 hours per week. However, after she filed her formal complaint, Defendants went so far as to schedule Plaintiff a mere 80 hours of work over a two week period, while Defendants' male employees were scheduled to work 168 hours during the same timeframe.

18.     Additionally, prior to Plaintiff's filing of her charge, Defendant customarily rotated employees, including Plaintiff, from working eight hour shifts to twelve hour shifts. However, after Plaintiff filed her charge, Defendants precluded Plaintiff from rotating into twelve hour shifts and denied her the opportunity to work weekends.

19.     In response to the dramatic decline in her working hours, Plaintiff tried to compensate for those lost hours by picking up shifts of operators who called in sick, were absent, or left their shift early. However, each time Plaintiff requested to substitute in for another's shift, she was denied by Defendants.

20.     In addition to Defendants significantly reducing the number of hours Plaintiff worked per week, Defendants also significantly worsened Plaintiff's duties and work environment in retaliation for her internal complaints and formal charge.

21.     It is customary for an operator to start the day on a designated "line," with a machine assigned to the specific line. Operators usually work the same line each day and so use the same machine each day in transporting heavy equipment. The operator is also responsible for the maintenance of the machine being used. However, Plaintiff was the only operator that was constantly moved to different lines. Although Plaintiff kept her usual machine in exemplary condition, because she usually ended on a different line, she cleaned another's machine.

22.     Additionally, Defendants prevented Plaintiff from completing online courses or in-person trainings. During mid 2014, in an effort to keep current with her training and gain additional knowledge, Plaintiff consistently signed up for several training sessions, including online courses. Usually, with online courses, it was a very easy process where upon request the Human Resources Department simply issued an employee a password to take the course and granted immediate access to it. However, six months went by between Plaintiff asking for the course and Defendant giving Plaintiff a password to access the class. Plaintiff was finally granted password access after months of complaining about the delay.

23.     Although Defendant gave Plaintiff access to complete the online courses, Plaintiff was unable to finish any of her online trainings. Partway through each online course she began, the Human Resources Department would suddenly have a "problem" with her password and she was locked out of the training. Unfortunately, Plaintiff was unable to start the training where she left off and was forced to retake the class from the beginning. However, when Plaintiff reenrolled in the class, she encountered the same password problem again and so was subjected to a vicious cycle. However, none of Defendants' male employees had this problem. They signed up for and completed online classes without any hindrances.

24. In order to bypass the problems with the online courses, Plaintiff signed up for in-person trainings. If there was a class and work conflict, an employee usually just asked the supervisor for permission to work another shift. Permission was customarily and readily granted to male employees. However, Defendants denied Plaintiff permission to take in-person classes on numerous occasions. When Defendants finally granted Plaintiff permission to take a course, the course would suddenly be cancelled by Defendants.

25. Furthermore, Defendants denied Plaintiff the aid of a groundsperson (helper) during her shifts. During shifts, Lead Supervisor Don Moon allowed every operator but Plaintiff a groundsperson to help load equipment onto the operator's machine. Plaintiff repeatedly asked Mr. Moon for a groundsperson, but was denied each time. During August 2014, Plaintiff witnessed four groundspersons not assisting anyone, brought it to the attention of Mr. Moon, and asked if one could assist her. Mr. Moon denied Plaintiff any aid and told her that Taylor machine operators are not allowed a groundsperson. Plaintiff then pointed out three men who were operating Taylor machines, like herself, and each had a groundsperson helping them. Mr. Moon's response was to tell Plaintiff, "No one said life is fair." Plaintiff then informed Mr. Moon that his actions were discriminatory and he subsequently stormed off.

26. Moreover, Defendants repeatedly made Plaintiff handle whole yards of equipment alone. She was forced to do the work of at least four to five employees, while they sat idly. On occasion, Plaintiff became frustrated while doing this voluminous work. When this occurred, a supervisor or another operator would announce over the radio for Plaintiff to "quit being a baby" or "Waaa! Waaa!" These announcements were broadcasted to nearly all the employees working at the Navasota NOV site.

27. During one particularly egregious incident in late September 2014, supervisor James Schultz made Plaintiff load seven to ten trailers and fifteen trucks in eight hours. Plaintiff alone loaded the equipment by hand onto her machine and then drove her machine to the trailers and trucks and loaded them. All the while, the rest of the crew did nothing. Plaintiff then notified Mr. Eaton about James Schultz's actions. Mr. Eaton stated he would speak with Mr. Schultz. The next day, Mr. Schultz informed Plaintiff that she was being transferred out of his section and into another position. For the ten years prior to Plaintiff occupying this position, the position always had the aid of a groundsperson. However, Don Moon, at the behest of Mr. Eaton, and James Schultz, informed Plaintiff now that she was occupying the position, she would have to work alone without a groundsperson. By the end of the second day of her new position, Plaintiff was unable to walk or even operate her machinery because she was so physically exhausted and sore. Plaintiff knew this work was impossible without the help of a groundsperson and was forced to resign.

## VI. CAUSES OF ACTION

### A. SEX DISCRIMINATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED BY THE FAIR PAY ACT OF 2009

28. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

29. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is of the female sex. *See* 42 U.S.C. 2000e(f).

30. Defendants are employers within the meaning of Title VII. *See* 42 U.S.C. § 2000e(b).

31. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because she is a female.

32.     Defendants failed to promote Plaintiff because she is a female, which affected Plaintiff's terms, conditions, and privileges of employment. *See* 42 U.S.C. § 2000e-2(a). Accordingly, Plaintiff alleges that she was not promoted; she was qualified for the positions she sought; she is female and was within the protected class at the time of the failures to promote; and either the positions she sought were filled by someone outside the protected class or she was otherwise not promoted because of her sex. *See Black v. Pan American Laboratories*, L.L.C. 646 F.3d 254, 278 (5th Cir. 2011).

33.     Additionally, Defendants discriminated against Plaintiff by paying her less than similarly situated male employees. *See* 42 U.S.C. § 2000e-5(3)(A).

34.     Because Plaintiff is a female, Defendants subjected her to a hostile work environment, in violation of Title VII. Accordingly, Plaintiff alleges that Defendants' discriminatory behavior would be reasonably be perceived and was perceived, as hostile or abusive. *See Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993).

35.     Defendants have discriminated against Plaintiff in connection with the terms, conditions, or privileges of employment because of Plaintiff's sex. Additionally, Defendants have limited, segregated, of classified Plaintiff in such a manner that deprives Plaintiff of employment opportunities or adversely affects her status because of her sex. Defendants' actions regarding Plaintiff's sex violate Title VII. 42 U.S.C. § 2000e-2(a).

36.     Furthermore, Defendants have discriminated against Plaintiff regarding her compensation because of her sex and violated Title VII as amended by the Fair Pay Act, which provides that an unlawful employment practice occurs when an employee is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).

37. Defendants acted with malice or, in the alternative, with reckless indifference to the protected rights of Plaintiff.

38. As a result of all of Defendants' violations under Title VII, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress. Thus, Plaintiff is entitled to reimbursement of wages, compensatory damages, punitive damages, and reasonable attorney's fees, costs, and disbursements incurred in this action.

### B. RETALIATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

39. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

40. Defendant has retaliated against Plaintiff in violation of Title VII by taking adverse employment actions against her after she made protected complaints of sex discrimination. 42 U.S.C. § 2000e-3(a).

41. Defendants constructively discharged Plaintiff by making her working conditions so difficult or unpleasant that a reasonable person subjected to the same conditions would have felt compelled to resign. *See Harvill v. Westward Comms.*, 433 F.3d 428, 439-40 (5th Cir. 2005). Defendants reassigned Plaintiff to menial or degrading work; badgered, harassed, and humiliated Plaintiff; and reduced the number of hours Plaintiff worked and accordingly her wages. *See id.*

42. Defendants acted with malice or, in the alternative, with reckless indifference to the protected rights of Plaintiff.

43. As a result of all of Defendants' violations under Title VII, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress. Thus, Plaintiff is entitled to reimbursement of wages, compensatory damages, punitive damages, and reasonable attorney's fees, costs, and disbursements incurred in this action.

### C. FAIR LABOR STANDARDS ACT AS AMENDED BY THE EQUAL PAY ACT OF 1963

44. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

45. At all times relevant to this lawsuit, Defendants NOV and Grant Prideco were and remain, an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* (the "FLSA") and is subject to the FLSA. 29 U.S.C. § 203.

46. Defendant NOV is a multinational corporation that is in the business of providing mechanical components, equipment, and products for use in oil and gas production.

47. Defendant Grant Prideco is also in the oil and gas business. Specifically, Grant Prideco manufactures and supplies drill pipe and drill stem accessories to oil and gas producers.

48. Defendant NOV's annual revenues exceeded $500,000 in each of the last five years. Defendant Grant Prideco's annual revenues also exceeded $500,000 in each of the last five years.

49. Defendants employed Plaintiff at all relevant times within the meaning of the FLSA. 29 U.S.C. § 203(g).

50. Defendant employed Plaintiff and male employees in jobs requiring substantially equal skill, effort, and responsibility. The Plaintiff's job and the male employees' jobs were performed under similar working conditions. However, Plaintiff was paid a lower wage than male employees doing substantially equal work.

51. Defendants' willful actions demonstrate, it engaged in discrimination against Plaintiff and violated the Equal Pay Act of 1963 as amended, which prohibits sex-based wage discrimination between males and females in the same establishment who perform jobs that require substantially equal skill and effort and responsibility under similar working conditions. 29 U.S.C. § 206(d).

52. As a result of Defendants' willful violations of the FLSA as amended by the Equal Pay Act, Plaintiff is entitled to reimbursement of wages, front pay damages, an equal amount as liquidated damages, and reasonable attorney's fees, costs, and disbursements incurred in this action pursuant to 29 U.S.C. § 216(b).

    D. **RETALIATION PURSUANT TO THE FAIR LABOR STANDARDS ACT AS AMENDED BY THE EQUAL PAY ACT**

53. Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

54. Plaintiff complained to Defendants that they failed to give her raises and they were compensating her at a rate less than the rate they compensated male employees for equal work on jobs performed under similar working conditions.

55. As a result of Plaintiff's complaint, Defendants willfully violated the FLSA by taking adverse employment actions against Plaintiff, including harassing her, significantly reducing the hours Plaintiff worked, changing her job duties, and increasing her workload.

56. Defendants constructively discharged Plaintiff by making her working conditions so difficult or unpleasant that a reasonable employee would feel compelled to resign. *See Conner v. Celanese, Ltd.*, 428 F.Supp.2d 638, 639 (S.D.Tex. 2006). Defendants reassigned Plaintiff to menial or degrading work; badgered, harassed, and humiliated Plaintiff; and reduced the number of hours Plaintiff worked and accordingly her wages. *See id.*

57. As a result of Defendants' willful violations of the FLSA as amended by the Equal Pay Act, Plaintiff is entitled to reimbursement of wages, front pay damages, an equal amount as liquidated damages, and reasonable attorney's fees, costs, and disbursements incurred in this action pursuant to 29 U.S.C. § 216(b).

## VII.  JURY DEMAND

58. Plaintiff hereby demands a trial by jury and tenders the jury fee.

## VIII.  PRAYER

59. Plaintiff sustained damages as a result of the actions and/or omissions of Defendants described herein. Accordingly, for the reasons set forth above, Plaintiff respectfully prays that the Defendants be cited to appear and answer herein, and for the following relief:

   a. lost wages less any interim earnings;

   b. front pay damages;

   c. liquidated damages;

   d. compensatory damages;

   e. punitive damages;

   f. an award of pre-judgment and post-judgment interest on all amounts awarded at the highest rate allowable by law;

   g. for reasonable attorneys' fees and costs; and

   h. all such other and further relief to which Plaintiff may show herself to be justly entitled.

Respectfully Submitted,


kennard
blankenship
robinson P.C.

_____
Terrence B. Robinson
Texas Bar No. 17112900
5433 Westheimer, Suite 825
Houston, Texas 77056
Main: 713.742.0900
Fax: 713.742.0951
**ATTORNEY FOR PLAINTIFF**